UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BILLIE SHEPPERD | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | C.A. No.  05-02126 (TFH) |
| | * | |
| DISTRICT OF COLUMBIA | * | |
| | * | |
| Defendants. | * | |
| | * | |

PLAINTIFF SHEPPERD'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff Billie Shepperd, a sixty-five (65) year old, a "Black/Triracial" woman initiating this action with her pro se Complaint.  Complaint, Civil Docket No. 1, filed November 1, 2005.  Ms. Shepperd seeks relief for the harms she claims befell her while an employee of the District of Columbia government, the Defendant here, due to its treatment of her because of her age, race and/or participation in protected activities, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-et seq and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C § 621 et seq**.**  Defendant has moved to dismiss the Complaint, asserting that it fails to state a claim for relief, pursuant to Rule 12 (b)(6), Fed. R. Civ. P. For the reasons stated below, Plaintiff, now represented by counsel, [1] respectfully requests the Court deny Defendant's Motion to Dismiss for Failure to State a Claim.

---

[1] Notice of Appearance, Civil Docket No. 6, filed January 25, 2006.

I.    FACTUAL STATEMENT

Ms. Shepperd began employment for Defendant D.C. in 1987, working until her involuntary termination on July 31, 2003.  Complaint, ¶ 4.   From 1998 until her termination, Ms. Shepperd, who has a Masters of Science in Public Health, Id. at Count II, p. 7, served in the position of Public Health Analyst at the DS-13 grade level.  Id. at ¶ 6.   Plaintiff was assigned as a School Program Liaison in the Maternal and Family Health Administration (MFHA).  Id.

Since January, 2001, Plaintiff experienced changes in her workplace, interfered with her ability to perform the duties of her position.   That month, Ms. Shepperd was transferred from the offices of the MFHA, with little notice, to the space then occupied by the soon to be defunct Public Health Benefit Corp. on the grounds of DC General Hospital.  Id. at ¶ 7.  That is the earliest instance of a management decision in her Complaint.   Ms Shepperd later asserts that the transfer itself created a hostile environment for her.  Id. at Count III, pp. 8-9.

In support of her claim, Plaintiff recites several specific problems created by the transfer.  Plaintiff was isolated from her co-workers and headquarters staff with whom interaction was asserted as a "necessary component" of her job.  Id.  A computer and a reliable working telephone were other necessary components of her work which were not provided for over six (6) months. Id.

Further, Ms Shepperd claims that the new location raised concerns about safety, since she was "subjected to the comings and goings of prisoners" while she was "without protection and means of communication", i.e., a telephone that works reliably or a computer for over six (6) months.  Id.  and at ¶ 8.

The isolation increased when all but one other person left the entire floor.  Id.

Ms. Shepperd received a satisfactory performance rating from a new supervisor in April, 2002, but was informed in July of that year that she was being put on probation and that her employment status was being changed, so that renewal of her contract was required every thirty (30) days.  Id. at ¶ 9.  Previously, Ms. Shepperd had been employed on a thirteen (13) month contract, renewed consistently for a period of fourteen (14) years.  Id.

Plaintiff alleges that probation was unjustified.  Plaintiff asserts the wrong procedure was followed.  If her work performance was her supervisor's motivation, then Ms. Shepperd should have been informed by her supervisor of the specific deficiencies allegedly observed.  No such information or an opportunity to challenge the change in her status from 13 month term employee was provided by any MFHA official, before.  Id.

Plaintiff Shepperd filed an EEO claim about her hostile work environment claiming its cause was age and race discrimination and retaliation in April, 2003.  Id. at ¶ 10. [2]  Shortly after the complaint was filed, it was forwarded to the Department of Health's EEO office for investigation.  Id. at ¶ 11.

Little more than two weeks after the initiation of the EEO investigation, Plaintiff's supervisor requested from her a letter stating Ms. Shepperd's intention to retire.  Id. at ¶ 12.  Plaintiff told her supervisor that she was not planning to retire.  Id. at ¶ 13.  Two weeks later, Ms. Shepperd was presented with a termination letter, setting her last day of work as June 30, 2003.  Id.

---

[2]  Plaintiff Shepperd filed this action *pro se.*

In mid June, Defendant's EEO officer requested that Plaintiff's termination be postponed for thirty (30) days, to allow her to finalize the EEO report.  Ms. Shepperd was thereafter notified that her termination would be put off until July 31, 2003.  Id. at ¶ 14. Plaintiff's supervisor's explanation for her inquiries for a retirement date was to allow her to plan resources.  Id. at ¶ 16.

On July, 2003 the EEO officer reported her findings and her determination that Plaintiff had been subjected to disparate treatment and a hostile environment.  Id. at ¶ 15. The EEO Report further found that the requests for a retirement date from the supervisor "could be seen as a basis for ageist discrimination", even considering Defendant's explanation.  Id. at ¶, 17.

On July 21, 2003, three (3) days after the EEO Report was issued, Ms. Shepperd was told that if she did not retire, she would lose her retirement benefits.  Id. at  ¶18. Coerced by fear of that loss and her potential inability to obtain comparable employment, Plaintiff informed Defendant's personnel office that she was retiring, but also explained that it was not voluntary.  Ms. Shepperd further informed the personnel office that the cause of her retirement request was her supervisors' threats, which she believed were caused by age discrimination or retaliation.  Id. at ¶ 19.

After Ms. Shepperd visited Personnel to unwillingly request they process her retirement, she was given a letter of termination on July 28, 2003, effective three (3) days later, by MFHA Director Marilyn Myrdal.  Plaintiff was told that the reason for her termination was the term of the position she held would expire on that date.  Id. at ¶ 20.

Plaintiff Shepperd's Complaint asserts that the actions of Ms. Myrdal were "further retaliation on the part of her employer."  Id. at ¶ 21.

Thereafter, on August 11, 2003, Plaintiff filed a charge with the US Equal Employment Opportunity Commission (EEOC), which investigated her complaint. Id. at ¶ 22. The Commission then found reasonable cause to believe that a violation of the ADEA occurred against Plaintiff Shepperd, but made a "no cause finding as to her Title VII claims." Id. EEOC's efforts at conciliation failed and it issued a Notice of Right to Sue. Ms. Shepperd received the Notice on August 5, 2005, less than ninety (90) days before the filing of the instant action. Id. at ¶ 23. Plaintiff Shepard, pro se, filed this Complaint on Nov. 1, 2005.

II.    STANDARD OF REVIEW

Defendant's motion to dismiss relies upon Rule 12 (b)(6), alleging Ms. Shepperd's Complaint did not state a claim for which she would be entitled to relief. Defendant's Motion to Dismiss, Document 5, p. 1. Such a motion tests the sufficiency of the facts in the Complaint, requiring scrutiny by the court "to determine if the allegations provide for relief on any possible theory." Church of Scientology v. Foley, 640 F.2d 1335, * 7 (D.C. Cir. 1980).

A. Plaintiff's Obligation is Minimal

Under Fed. R. Civ. P. 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e)(1) states that "each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."

Rule 8(f) creates its own standard by requiring that "all pleadings shall be so construed as to do substantial justice."

In <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), the Supreme Court, setting the standard for dismissal under Rule 12 (b)(6), held that "all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests..." <u>Id</u>. at 48.

This Circuit, in <u>Sparrow v. United Air Lines, Inc.</u>, 216 F.3d 1111, 1115 (D.C. Cir. 2000), applied <u>Conley</u> in a race case, holding that "because racial discrimination in employment is 'a claim upon which relief can be granted,'... 'I was turned down for a job because of my race' is all a complaint has to say" to survive a motion to dismiss. <u>Id.</u>, quoting <u>Bennett v. Schmidt</u>, 153 F.3d 516, 518 (7th Cir. 1998); see <u>Krieger v. Fadely</u>, 211 F.3d 134, 136 (D.C. Cir 2000)(citing <u>Bennett</u> with approval).

B.  Plaintiff's Facts Are to Be Read Broadly

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant Plaintiff the benefit of all inferences that can be derived from the facts alleged." <u>Sparrow</u>, 216 F.3d at 1115.  In <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), the Supreme Court, holding unions may owe its members a duty of fair representation regardless of race, reversed the dismissal of the complaint, quoted <u>Conley</u>, 355 U.S. at 45-46:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Relying upon the same quote from <u>Conley</u>, another panel in this circuit called it "the presumption against dismissal on the pleadings" noting it could intensify, becoming a "heavy burden", when combined with other defenses raised, such as timeliness. <u>Church of Scientology v. Foley</u>, 640 F.2d 1335, *7 (D.C. Cir. 1980).

C.  Pro Se Plaintiffs Are Subject To "Less Stringent Standards"

Additionally, the Supreme Court has instructed lower courts to hold "allegations of [a] pro se complaint ... to less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (*per curiam*); <u>Fletcher v. Reilly</u>, 2006 U.S. App. LEXIS 269, *28 (D.C. Cir. 2006) (a pro se plaintiff's complaint, "however inartfully pleaded," is subject to the "less stringent standards" of <u>Haines</u>). [3] That Supreme Court case is also relied upon in <u>Sparrow</u>, 216 F.3d at 1113 n.2.

Although now represented by counsel, Plaintiff Shepperd drafted and filed her Complaint pro se and it is the sufficiency of that document Defendant tests with its Motion to Dismiss. [4] Therefore, the <u>Haines</u> less stringent standard applies here.

## II.    PLAINTIFF'S    COMPLAINT    SUFFICIENTLY    STATES    FACTS SUPPORTING    TWO    VALID    CLAIMS    OF    EMPLOYMENT DISCRIMINATION

Plaintiff Shepperd's Complaint sets forth facts showing that she has suffered in the work place in two distinct ways:  1) Plaintiff was subjected to a hostile work environment which  interfered with her ability to perform and 2)  Plaintiff was terminated from her position for unlawful reasons.  Ms. Shepperd alleges violations of both Title VII and the ADEA. [5]

---

[3]  Counsel intends no inference that Ms. Shepperd's Complaint was inartfully plead. Rather, <u>Fletcher</u> demonstrates this Circuit's standard for permitting claimants access to federal courts if the facts presented could reasonably support any claim.  <u>Scientology</u>, 640 F.2d at *7.

[4]  <u>Conley</u>, 355 U.S. at 45.  "[i]n appraising the sufficiency of the complaint …"

[5]  Ms. Shepperd cites to both Title VII and the ADEA, but the wording of the titles for the counts in the Complaint alleges retaliation (Count I), age discrimination (Count II) and harassment (Count III).  Complaint, pp. 6-10, Docket Sheet, Document No. 1, filed

Reasonably read, Ms. Shepperd's pro se Complaint asserts two separate claims for relief against Defendant District of Columbia.

A.  Plaintiff's Complaint Sufficiently Pleads an Unlawful Hostile Environment Claim

Title VII and the ADEA provide employees protection against unlawful adverse alterations in the terms and conditions of employment.  Title VII, 42 U.S.C. § 2000e-2(a); ADEA, 29 U.S.C. § 623. [6]  It is held as an unlawful employment practice to "require people to work in a discriminatorily hostile or abusive environment," Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). As the Supreme Court has explained, when workplace hostility "is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." Harris, 510 U.S. at 21, quoting Meritor Savings Bank v. Vinson, 477 U.S. 57, 65-67 (1986). This Court has found that "one act may be sufficient if it is particularly severe while less intense incidents may be sufficient if numerous." Martin v. Howard University, 1999 U.S. Dist. LEXIS 19516, *12  (D.D.C. 1999) (citations omitted)

This Court held in Martin, that "whether or not a reasonable victim would find [incidents of harassment alleged by plaintiff] sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment is appropriately an issue of fact for the jury, not one which this Court can summarily adjudicate." U.S. Dist. LEXIS 19516 at *13.  Similarly, Plaintiff Shepperd has offered incidents that create a similar triable issue of fact that the Court cannot summarily

---

Nov. 1, 2005 (hereafter "Complaint").  However, any possible theory which is supported by the facts is enough.

[6]  The Supreme Court has recently conformed the interpretation of the ADEA even more with Title VII, noting a long practice of similar ruling providing consistency among civil rights statutes.  Smith v. City of Jackson, 544 U.S. 228, ***10 (2005)

adjudicate by Fed. R. Civ. P. 12(b)(6) dismissal. cf. <u>Powell v. Las Vegas Hilton Corp.</u>, 841 F. Supp. 1024, 1029 (D. Nev. 1992) (holding that whether two incidents of verbal abuse--"great tits" and "great legs"—and three incidents of staring by non employees constituted sexual harassment of plaintiff was a triable issued of fact).

To establish a prima facie hostile work environment claim, Plaintiff Shepperd must demonstrate that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment, (3) the harassment occurred because of her race or age; (4) the harassment affected a term, condition or privilege of employment and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it. <u>Jones v. Billington</u>, 12 F. Supp. 2d 1, 11 (D.D.C. 1997), <u>aff'd</u>, 1998 U.S. App. LEXIS 15459 (D.C. Cir. 1998).

The hostile work environment alleged in the Complaint began with Ms. Shepperd's transfer from the Maternal and Family Health Administration's offices to the soon to be defunct Public Health Benefits Corporation in January, 2001. The move was undertaken before necessary arrangements could be made to ensure that she would have the necessary tools to perform the duties of her position. Moved ostensibly to be near the School Health Program to which she served as liaison, for over six months Plaintiff was instead isolated in an area near a prison ward, without a phone or computer. Ms. Shepperd noted concerns about her protection. She was also far away from her supervisor and other department staff. Her isolation only increased when the only other coworker near her was transferred to an area equivalent to half a city block away from her. Complaint, Count III, pp. 8-10.

It is not necessary to determine if these allegations alone would support Plaintiff's claim of a hostile work environment, since other instances occurred. Courts consistently allow plaintiffs the opportunity to review the totality of the circumstances. <u>Harris</u>, 510 U.S. at 23. ("whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances."). Thus, when a string of employer actions leads a plaintiff to perceive her environment as hostile or abusive each incident could be relevant, can be supportive of a hostile environment claim and should be considered, regardless of whether it could support such a claim as the only harassing incident. <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81 (1998), citing <u>Harris</u>, 510 U.S. at 23.

A performance evaluation with which she did not agree occurred here also, but the punishment was unusually harsh. Without identifying specific performance deficiencies, Plaintiff's supervisor converted the term of Ms. Shepperd's contract from thirteen (13) months to one month. Complaint, ¶ 9. Although not an immediate money change, the loss of security created another safety issue for Plaintiff.

Such conditions are hardly "ordinary tribulations of the workplace," <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) and without question they affected a term or condition of her employment. <u>Jones</u>, 12 F. Supp.2d at 11.

Defendant first argues, without merit, that Plaintiff must suffer an "adverse action" to state a claim pursuant to either Title VII or the ADEA. Defendant's Motion to Dismiss, p. 5

Defendant's argument fails for two separate reasons:

1) Defendant's claim that no adverse action is alleged in the Complaint is patently

erroneous, and

2) Defendant misstates the law since a hostile workplace claimant need not prove the loss of an adverse action. <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 754 (1998). Instead, a plaintiff is burdened with demonstrating hostility "is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' <u>Id</u>.; <u>Harris</u>, 517 U.S. at 21.

Title VII's ban on retaliation makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has "made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing…" 42 U.S.C. § 2000e-3(a). Plaintiff did file an EEO charge in April, 2003. Complaint, ¶10. Facts to support both are plead or could be derived from the facts alleged in the Complaint.

This Court has held that "once there is evidence of improper conduct and subjective offense…the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury. <u>Wade v. Washington Metropolitan Area Transit Authority</u>, 2005 U.S. LEXIS 12972, *8 (D.D.C. 2005). Plaintiff's complaint offers multiple instances of improper conduct, confirmed by Defendant's EEO officer as well as statements of subjective offense. In <u>Wade</u>, the Court notes plaintiff's placement in an "undesirable location," as possible evidence of a tangible employment action. This is not unlike Plaintiff's transfer to the Public Health Benefits Corporation where she was placed next to a prison ward without a phone or computer.

III.    PLAINTIFF PLAINLY AND REPEATEDLY ALLEGED THE ULTIMATE
        ADVERSE ACTION, TERMINATION

The Supreme Court in <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 761 (U.S. 1998) defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Plaintiff's termination constitutes such an action as it causes a significant change in employment.

Plaintiff presents facts in her complaint that indicate a claim of wrongful termination.  Defendant's characterization of Plaintiff's claims as a "constructive discharge," has no relevance as Plaintiff was in fact terminated asserted in multiple paragraphs in her complaint.  Complaint, ¶1, 13,18, 20.  The complaint makes reference to multiple efforts to have Ms. Shepperd leave.  Plaintiff, first received a letter of termination from her supervisor, Colleen Whitmore, on May 30, 2003.  At the behest of the EEO officer, Ms. Shepperd was given another 30 day appointment in order for the EEO to complete its investigation of Ms. Shepperd's claims.   On July 18, 2003, the EEO officer issued her findings of disparate treatment and a hostile environment.  That report also found that inquiries into her intentions to retire could be viewed as ageist discrimination. Yet, only three days later, Ms. Shepperd was informed that if she did not retire, she would lose her retirement benefits.  Plaintiff, believing that no other recourse was available, notified the office of personnel of her intention to retire but indicated that the decision was coerced and the result of discrimination and retaliation.  On July 28, 2003, Marilyn Seabrooks Myrdal, Director of the Maternal and Family Health Administration, issued Plaintiff a second letter of termination effective three days later.  On July 31, 2003, Plaintiff lost her position with Defendant.  Plaintiff's termination, as made clear in <u>Ellerth</u>, serves as the ultimate adverse action taken against an employee.

IV.   DEFENDANT MISAPPLIES CASE LAW TO ALLEGE UNTIMELINESS
       OF PLAINTIFF'S CLAIMS

Defendant relies on AMTRAK v. Morgan, 536 U.S. 101 (2002) to support his contention that Plaintiff must file an EEOC charge within 180 days of the precise act of alleged discrimination. Defendant's Motion to Dismiss, p. 9.  Yet, the Court in Morgan held that "hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. Id. at 115; Singletary v. District of Columbia, 351 F.3d 519, 526-27 (D.C. Cir. 2003).  Therefore, the "unlawful employment practice cannot be said to occur on any particular day." Id.   Because the Court looks to "all the circumstances" when evaluating a hostile work environment claim, Morgan held that the timely filing provision only requires that Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. Id. at 116-17.  It does not matter, for purposes of the stature that some of the component acts of the hostile work environment fall outside the statutory period. Id. at 117. Thus, so long as Plaintiff can establish that some of the component acts occurred within the 180 days prior to the filing of her EEOC charge on August 11, 2003, she has satisfied the requirements of Morgan. In the 180 days prior to the filing of her charge, Ms. Shepperd was subjected to constant badgering about her intentions to retire, her benefits were threatened and she was issued two letters of termination.  Such acts, which are not exclusive, provide the timely acts required by Morgan for a court to look at "all the circumstances," to evaluate Plaintiff's hostile work environment claim, including those acts which fall outside of the statutory filing period.

Further, as in Morgan, Plaintiff alleges three types of Title VII claims, discrimination, hostile environment and retaliation. 536 U.S. at 107-08.  The Court in

Morgan affirmed the Court of Appeals ruling finding that considered allegations with respect to each category of claim separately and found that pre-limitations conduct was sufficiently related to the post limitations conduct to invoke the continuing violations doctrine for all three.  Id. at 108.

In Singletary, the court cited evidence that the plaintiff was intentionally assigned to work in an unheated storage room for over a year and a half as discriminatory.  351 F.3d at *25.  This assignment was not unlike Plaintiff being transferred by Defendant to an area near a prison ward with no phone or computer for over six months. The transfer occurred under the supervision of Marilyn Seabrooks Myrdal who also was involved in badgering Plaintiff Shepperd to retire and issued her a letter of termination.[7]

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

_____
Gary T. Brown,
D.C. Bar # 246314
GARY T. BROWN & ASSOCIATES
320 Maryland Avenue, N.E.
Suite 100
Washington, D.C. 20002
(202) 393-4900
Attorney for Plaintiff Billie Shepperd

_____
[7] Although the Complaint does not allege that Ms. Myrdal was in Ms. Shepperd's supervisory chain during the entire period of harassment, the Complaint does not foreclose that possibility.  Since any reasonable set of facts can support a complaint when challenged by Defendant's Fed. R. Civ. P. 12(b)(6) motion, Plaintiff's complaint should be permitted.